## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMY WINDISH,<br>**Plaintiff,** | | **CIVIL ACTION** |
| **v.** | | |
| **3M COMPANY,**<br>**Defendant.** | | **NO. 23-1531** |

### OPINION

Defendant 3M Company ("3M") moves for the Court to sanction Plaintiff Amy Windish for her alleged repeated and willful failures to comply with the Court's orders relating to discovery in this case.  Fed. R. Civ. P. 37(b), (e).  For the following reasons, 3M's Motion will be granted, and Windish's Complaint will be dismissed with prejudice.

### I.    BACKGROUND

According to her Complaint, Windish was an employee of 3M Company during the COVID-19 pandemic.  The company imposed a requirement that all employees be vaccinated against the virus.  3M also implemented a process for employees to request either medical or religious exemptions from the mandate.  Consistent with her faith as a Jehovah's Witness, Windish is opposed to abortion and understood the available vaccines to have "ma[d]e use of aborted fetal cell lines in the manufacturing or testing process," so she submitted two religious exemption requests.  After requesting and receiving supplemental information from Windish, 3M denied her an exemption.  Windish nonetheless refused to get vaccinated by the company's deadline, so 3M suspended her for two weeks and then fired her.

After receiving a right to sue letter from the Equal Employment Opportunity Commission, Windish timely filed this lawsuit alleging that 3M had failed to accommodate her sincerely held religious belief, in violation of both Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.

§ 955(a) *et seq.*  She seeks damages and injunctive relief to prevent 3M "from taking any further

adverse employment action against" her and "from taking any similar discriminatory adverse

employment action against any other 3M employee."

Discovery in this relatively simple case has been far from smooth.  At the Preliminary

Pretrial Conference in September 2023, 3M raised its concern that Windish had not yet shared

the necessary authorization to release her medical records.  These records were relevant because

Windish had stated in her Complaint that she "does not take medicine."  Despite the Court

having encouraged her to sign these forms quickly to facilitate the discovery process, Windish

concluded the authorization requests were overbroad and declined to do so.  Only after a second

teleconference with the Court the following month did Windish issue the necessary

authorizations.

The parties also clashed over Windish's responses to 3M's requests for production.

These requests included information relating to Windish's social media activity and

communications with colleagues, such as:

26. A printout or electronic copy of the following electronic communications,
    whether on Plaintiff's hard drive, stored by Plaintiff's internet service provider,
    sent through a social networking site, in Plaintiff's deleted items, or otherwise
    stored, if in any way accessible or retrievable by Plaintiff:

    a.  All communications that refer or relate to absence from work;
    b.  That refer or relate to Plaintiff's religious beliefs;
    c.  All communications that refer or relate to Plaintiff's employment from
        January 1, 2018 to the present;
    d.  All communications that refer or relate to cessation of Plaintiff's
        employment with Defendant; or
    e.  All communications exchanged with anyone working for Defendant
        (currently or formerly).

27. For all social networking services to which Plaintiff has subscribed or of which
    Plaintiff has been a member from January 1, 2018 to the present, including but not

2

limited to such services as Facebook, Instagram, Snapchat, Twitter, and LinkedIn:

    a. Provide copies of Plaintiff's home page from January 1, 2018 to the present to the extent accessible;

    b. Provide copies of all accessible postings, emails, blogs, including all photographs, messages and text, from January 1, 2018 through the present that refer or relate to Plaintiff's employment, religious beliefs, political beliefs, or other activity;

    c. Provide copies of all accessible postings, emails, blogs, including all photographs, messages and texts, from January 1, 2018 through the present that refer or relate to Plaintiff's job search or termination from any employer; or

    d. Provide copies of all accessible postings, emails, blogs, and texts that refer or relate to COVID-19, COVID-19 vaccines, and/or COVID-19 vaccine mandates.

28. A printout or electronic copy of all accessible text messages from January 1, 2018 to the present:

    a. That refer or relate to Plaintiff's employment;

    b. That refer or relate to Plaintiff's religious beliefs;

    c. That refer or relate to Plaintiff's separation from Defendant;

    d. That refer or relate Defendant;

    e. That were exchanged with anyone employed by Defendant (current or formerly); or

    f. That refer or relate to or provide opinions relating to COVID-19, COVID-19 vaccines, and/or COVID-19 vaccine mandates.

43. All documents, including emails, text messages, and plaintiff's social media posts relating to or evidencing Plaintiff's opinions on COVID-19, COVID-19 vaccines, and COVID-19 vaccine mandates.

44. All documents, including emails, text messages, and social media posts relating to or evidencing Plaintiff's religious beliefs.

45. All documents, including emails, text messages, and social media posts relating to or evidencing Plaintiff's affiliation with any church or religious organization Plaintiff has participated in the past ten years.

Windish refused to produce these documents, arguing that they were irrelevant to a religious discrimination case and instead were evidence that 3M was "trying to launch an inquisition into [her] religious beliefs." ECF No. 17 at 6. Two weeks before the fact discovery deadline, 3M moved to compel Windish's compliance with the above requests. The Court

granted the Motion to Compel with respect to all the above requests for production except for

Requests for Production 26(e), 27(a), 28(a), 28(d), and 28(e).  ECF No. 18.  The Court also

denied the motion to compel production of the portion of Request for Production 27(b) that

referenced Windish's political beliefs and limited Request for Production 45 so that it only

reached content less than five years old.  *Id.*  The fact discovery deadline was extended for the

limited purposes of allowing Windish to comply with the Court's order and to depose 3M's

corporate representative.  Fed. R. Civ. P. 30(b)(6).

Even after the Court issued that order and extended the discovery deadline, however,

Windish produced responsive documents only in fits and starts.  It became apparent to 3M based

on Windish's deposition testimony that she would need to make sizable additional disclosures to

comply with the Court's order.  For example, 3M received via discovery a letter that John

Hayden, Treasurer of a Quaker meeting house, wrote to Windish detailing her involvement in the

community's activities.  In her deposition, Windish testified that she had exchanged either text

messages or emails with Hayden because she wanted to show 3M "proof that [she] was part of

the Quaker community."  These messages should have been produced pursuant to Request for

Production 45 but had not been.  Windish also testified that, while she was still working at 3M,

she had taken notes about the company's vaccination mandate and her concerns about complying

with it.  She emailed these notes to herself, so they should have been produced pursuant to

Requests for Production 26(b) and 26(c) but had not been.  Windish also testified that she had

spoken with a fellow former 3M employee, Hannah Cleckner, only through the company portal

or through Telegram, but not via text messages.  But Cleckner, who also has sued 3M over its

denial of her request for an exemption,[1] produced—in her case—text messages between her and

---

[1] *Cleckner v. 3M Co.*, No. 22-cv-2055 (M.D. Pa. filed Dec. 27, 2022).

Windish in which they discuss the COVID-19 vaccine and what they understood to be its traits. These text messages should have been produced pursuant to Requests for Production 28(b) and 43 but had not been.  Similarly, Windish made clear in her testimony that she had used the messaging app Telegram and the social media platforms Instagram and Truth Social.  On Telegram, Windish apparently had been part of a group including other 3M employees where they discussed the vaccine mandate.  These messages should have been produced pursuant to Requests for Production 26(c) and 26(d) but had not been.[2]

After Windish's deposition, 3M wrote to Plaintiff's counsel and identified these and other possible deficiencies in her productions.  In response, Windish produced 109 additional pages of documents.  In its letter to opposing counsel accompanying the production, Windish's attorney noted that: "Plaintiff has produced all notes, messages, social media posts, emails, and communications per the Court's order and relevant to Defendant's document requests that have or can be recovered from all devices and social media platforms."  But deficiencies clearly remained, and 3M once again wrote to Plaintiff's counsel to address them.  3M's response specifically noted that the screenshots of Telegram chats included in the production would need to be supplemented by producing the entirety of the group chats referenced therein.  As 3M pointed out, Windish's latest production also was missing her contemporaneous notes, her communications with Hayden, Cleckner, and another colleague, all of which had been referenced in her deposition.  Windish's subsequent disclosure included only thirty-eight pages of documents.  In a letter accompanying this production, Windish noted that she "ha[d] determined

---

[2] This continued a pattern that began with Windish's cagey response to 3M's interrogatories.  When asked what "online networking profiles" she "maintained or used . . . for business and/or personal reasons," Windish responded that she "does not maintain any business networking profiles."  In doing so, she did not answer half of 3M's question and failed to mention the multiple social media platforms on which she had accounts for personal use.

that she does not consent to providing Defendant with access to her social media accounts." She also "confirm[ed] that she has diligently identified and produced emails and text messages in response to Defendant's requests using the referenced search terms" and agreed to produce any contemporaneous notes or communications with Hayden that were "within her possession, custody or control." Windish does not dispute in her briefing on 3M's Motion that no such production has taken place since.

3M's own investigation led it to believe that Windish's productions were woefully insufficient in additional respects. First, as discussed above, discovery in the Cleckner litigation revealed that Windish had been communicating with her colleagues about the company's vaccination requirement. Second, 3M found a public-facing version of Windish's Truth Social account. Despite Windish having testified that she did not use the platform much, 3M found dozens of responsive posts that had not been produced, including in the days leading up to her deposition. Windish does not dispute the authenticity of 3M's screenshots of her account.

Citing Windish's failure to abide by the Court's order on its motion to compel and spoliation of evidence, 3M now moves for sanctions pursuant to Federal Rule of Civil Procedure 37, asking that the Court dismiss this case with prejudice, or, in the alternative, "employ other sanctions as it sees fit."[3]

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide that, where a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders," including "dismissing the action or proceeding in whole or in part" or "rendering a

---

[3] Windish argues that 3M's motion is improper because the Eastern District of Pennsylvania's local rules require the parties to make a "reasonable effort . . . to resolve the dispute first." E.D. Pa. Local Civ. R. 26.1. But, as the foregoing factual recitation shows, 3M has done exactly that here, repeatedly conferring with opposing counsel, seeking multiple conferences with the Court, and filing a motion to compel before seeking dismissal, so this is not a ground to deny the Motion.

default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2).  Moreover, "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court can dismiss the case or enter a default judgment "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation."  *Id.* 37(e).

Dismissal with prejudice "is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff."  *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982); *accord Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).  Such a decision "deprives a party of her day in court," *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013), so the dismissal authority enumerated in Rule 37 "must be read in light of the provisions of the Fifth Amendment that no person shall be deprived of property without due process of law," *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 209 (1958).  The Third Circuit employs a multifactor test to determine whether dismissal is an appropriate sanction:

> (1) the extent of the *party's* personal *responsibility*;
> (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery;
> (3) a *history* of dilatoriness;
> (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*;
> (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and
> (6) the *meritoriousness* of the claim or defense.

*Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984); *see Knoll*, 707 F.3d at 409.  This test does not offer "a magic formula," and "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint."  *Mindek v. Rigatti*, 964 F.2d 1369, 1374 (3d Cir. 1992)

(citing *Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.*, 483 F.2d 683, 696 (3d Cir. 1988)).

### III.   DISCUSSION

All but one of the *Poulis* factors weighs in favor of dismissal, so the Court will grant

3M's Motion.  Because Windish's "fail[ure] to obey an order to provide or permit discovery,"

Fed. R. Civ. P. 37(b)(2), is a sufficient basis for dismissing her case, the Court does not opine on

whether she intentionally failed to preserve relevant electronically stored information, *id.* 37(e).

### A.  Responsibility

Because the defiance of the Court's order can be traced to Windish herself, the first

*Poulis* factor favors dismissal.  *See Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988); *cf.*

*Elbaum v. Thomas Jefferson Univ. Hosps., Inc.*, 2014 WL 4309004, at *3 (E.D. Pa. Sept. 2,

2014).  The responsibility inquiry focuses on "whether the misconduct that occurred is

attributable to the party or to the party's attorney." *Adams v. Trs. of N.J. Brewery Emps' Pension*

*Tr. Fund*, 29 F.3d 863, 873 (3d Cir. 1994).  "The purpose of this analysis is to avoid penalizing a

party for his attorney's 'acts or omission.'" *Hanna v. Perdue*, 2019 WL 5551023, at *2 (E.D. Pa.

Oct. 25, 2019) (quoting *Poulis*, 747 F.2d at 868).

When a litigant knows of a court order to produce a given document but fails to do so, the

responsibility for that disobedience can be traced to her.  *See Bedwell*, 843 F.2d at 692.  Windish

did exactly that, failing to produce several important categories of documents that were in her

control contrary to a court order, her knowledge of which is not in dispute.  The most galling

lapses involve her communications with former colleagues about 3M's vaccine requirement and

her social media posts.  For both categories of information, the relevant documents were both:

(1) plainly covered by the Court's order; and, (2) in Windish's control.  Requests for Production

26(b) and 26(c) both would have covered Windish's texts with Cleckner and her Telegram group

chat communications, but her productions of both sets of documents are woefully incomplete.

The failure is even more pronounced in the context of Windish's social media profiles.  Take her

Truth Social account.  Request for Production 27(d) asked Windish to "[p]rovide copies of all

accessible postings, emails, blogs, and texts that refer or relate to COVID-19, COVID-19

vaccines, and/or COVID-19 vaccine" for "all social networking services to which Plaintiff has

subscribed or of which Plaintiff has been a member from January 1, 2018."  The request was not

limited to any specific social networking site.  As evidenced by her counsel's cover letter

accompanying one of her supplemental productions, Windish knew her Instagram and Truth

Social account credentials.  Despite the Court's order, however, Windish has produced just a few

screenshots from Truth Social (and none from Instagram), which, based on 3M's own

investigation, were far from her only responsive posts from the website.  That Windish

apparently considered these communications "personal" is irrelevant.  The Court ordered her to

produce certain documents.  That she might disagree with that order gives her no cause to

disobey it.[4]

Because Windish by her own admission had access to her text messages and Telegram

and Truth Social accounts but failed to produce obviously-responsive documents from these

sources, she is personally responsible for her defiance of the Court's order.

### B.  Prejudice

The second *Poulis* factor weighs strongly in favor of dismissal.  "Prejudice . . . includes

deprivation of information through non-cooperation with discovery, and costs expended

obtaining court orders to force compliance with discovery."  *Adams*, 29 F.3d at 874 (citing

*Bedwell*, 843 F.2d at 693).  Importantly, "[p]rejudice need not be 'irremediable harm that could

---

[4] Windish's argument that the public nature of her Truth Social account counsels against dismissal is misplaced.  For one, regardless of who can access the account's posts Windish still "fail[ed] to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A).  And in any event, Truth Social is far from the only source of responsive documents that have not yet been produced, and some, such as her text messages or Telegram group chats, obviously are not publicly available.

not be alleviated by [the] court's reopening discovery and postponing trial'" to be cognizable

under *Poulis*. *Id.* (quoting *Bedwell*, 843 F.2d at 693). Thus, a party's "repeated failures to

respond to . . . numerous discovery requests, or to this Court's numerous Orders directing

compliance with her discovery obligations, over a period of at least five (5) months" counsels in

favor of dismissal. *Laughton v. Best Legal Servs., Inc.*, 2017 WL 495793, at *3 (E.D. Pa. Feb. 6,

2017). On the other hand, where, after a court order, the moving party was able to "cure any

prejudice attributed to" the discovery misconduct, this factor weighs against dismissal. *Williams

v. First Student Inc.*, 2024 WL 1155434, at *4 (D.N.J. Mar. 16, 2024).

Here, 3M has been prejudiced because it has been deprived of important information

about its defenses to liability, and Windish has not come close to curing that deprivation. The

degree of the prejudice in this case can be discerned by looking at what Windish will need to

prove to prevail at trial. Her failure-to-accommodate claim requires proof that, *inter alia*, "she

holds a sincere religious belief that conflicts with a job requirement." *Webb v. City of

Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009). For it to give rise to liability under Title VII,

that belief must: (1) "address[] fundamental and ultimate questions having to do with deep and

imponderable matters;" (2) be "comprehensive in nature;" and, (3) (at least usually) include "the

presence of certain formal and external signs." *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d

Cir. 1981). The Third Circuit has held that, under *Africa*, opposition to vaccination does not

qualify when it is grounded only in medical judgments, such as a concern that taking a shot "may

do more harm than good," or in "'isolated moral teaching[s],'" such as a commitment not to

"violate [one's] conscience as to what is right and what is wrong." *Fallon v. Mercy Catholic

Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017) (quoting *Africa*, 662 F.2d at 1032).

Testing the veracity of Windish's allegation that she opposed getting the COVID-19 vaccine

because of her sincerely held religious beliefs concerning abortion, then, is a natural and

important area for 3M to focus on in discovery.[5]  Her failure to abide by the Court's order

directing her to produce information about the nature of her anti-vaccination beliefs thus

prejudiced 3M.  And while Windish has produced some documents, such as the Hayden letter

and a few Telegram and Truth Social screenshots, which would be relevant to the inquiry into

the nature of her beliefs, it is evident that significant amounts of information remain outstanding,

so she has not cured her failure to comply with the Court's order.  *Williams*, 2024 WL 1155434,

at *4.  Thus, this *Poulis* factor points towards dismissal.

### C.  History of Dilatoriness

The third *Poulis* factor weighs in favor of dismissal as well, but not strongly.  "Extensive

or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-

response to interrogatories, or consistent tardiness in complying with court orders."  *Adams*, 29

F.3d at 874 (citations omitted).  Courts examine both the length of the non-moving party's delay

of the case and the egregiousness of his or her misconduct when evaluating this factor.  *See id.* at

875.

Here, while not as egregious as in some of the cases in this circuit, Windish's history of

dilatoriness still weighs somewhat in favor of dismissal.  3M repeatedly warned her that she had

not complied with their discovery requests, both before and after the Court partially granted its

motion to compel.  The Court extended fact discovery to give her additional time to comply with

that order.  Windish's supplemental productions, however, were paltry and facially incomplete.

---

[5] In this way, Windish's argument that "there is no clear and convincing evidence of any document" having been withheld or destroyed "that counsel or Plaintiff should know would be necessary to element of the defense" is based on a faulty factual premise.  3M has produced Truth Social posts from Windish's profile that elucidate the nature of her anti-vaccination beliefs, discussing conspiracy theories that have little to do with abortion.  It has shown that similar additional content likely exists in Windish's Telegram group chats.  These posts could be used to undermine Windish's allegation that her opposition to the vaccine was based in a sincerely held religious belief.

Her "failure to comply fully with document requests" thus points in favor of dismissal. *Bedwell*, 843 F.2d at 694. True, the Court's order was issued only a few months ago, which stands in stark contrast with the yearslong delays that can give rise to dismissal under *Poulis*. *See, e.g.*, *Hildebrand v. Allegheny County*, 923 F.3d 128, 134-35 (3d Cir. 2019). But even shorter delays similar to the one in this case can support a finding of dilatoriness where, as here, the non-moving party has violated a court order. *See Garcia v. S&F Logistics*, 2022 WL 14228982, at *5 (E.D. Pa. Oct. 24, 2022); *Laughton*, 2017 WL 495793, at *3. Therefore, Windish's history of dilatoriness weighs in favor of dismissing her case, albeit not as strongly as the resulting prejudice to 3M do.

### D. Willful or Bad Faith Conduct

The fourth *Poulis* factor weighs in favor of dismissal. Dismissal under this factor is proper as a sanction "for the type of willful or contumacious behavior that can be characterized as flagrant bad faith, such as failing to answer interrogatories for nearly a year and a half, demanding numerous extensions, ignoring admonitions by the court, and making false promises to correct delays." *Hildebrand*, 923 F.3d at 135 (internal quotation marks and citation omitted); *see Bedwell*, 843 F.2d at 695. "Courts find willfulness and bad faith where no reasonable excuse for the conduct in question exists." *Harrington v. All Am. Plazas, Inc.*, 2010 WL 2710573, at *3 (D.N.J. July 7, 2010) (citing *Ware v. Rodale Press, Inc.*, 32 F.3d 218, 224 (3d Cir. 2003); *Cotopaxi Mfg. v. Pac. Design & Mfg., Inc.*, 2009 WL 749477, at *4 (D.N.J. Mar. 18, 2009)). Where, on the other hand, the party has "responded to and at least attempted to comply with Court orders in some fashion," this factor does not favor dismissal. *In re Avandia Mktg., Sales Pracs. and Prods. Liab. Litig.*, 319 F.R.D. 480, 486 (E.D. Pa. 2017).

Here, Windish's failure to comply with discovery requests was, at least with respect to

some of her omissions,[6] willful.  Lying to avoid one's discovery obligations is evidence of bad

faith.  *Bedwell*, 843 F.2d at 695 (treating a party's phone call to defense counsel "falsely

claiming that [he] was ill and could not attend the scheduled deposition" as an "indication of bad

faith").  And of course, admitting one's plan to defy a discovery request is evidence of

willfulness.  *Hanna*, 2019 WL 5551023, at *2 (citation omitted) (finding willful misconduct

where the plaintiff "admitted in filings to the Court that he refused his attorney's and

Defendants' attempts to schedule a deposition").

Windish did both things here.  Throughout this case, she has prioritized shielding her

social media presence from scrutiny over her discovery obligations.  First, in response to an

interrogatory, Windish misleadingly responded to 3M's request that she identify "all [of her]

online networking profiles" by saying that she "does not maintain any business networking

profiles," thus failing to identify her personal profiles on platforms like Pinterest and Truth

Social.  Second, in her deposition, she admitted that she intentionally did not produce certain

documents, testifying that she did not attempt to access her Telegram messages because doing so

would require her to divulge what she considered to be personal information.  Third, even after

the Court had granted 3M's motion to compel in the relevant part, Windish said that she had

"produced all . . . social media posts . . . per the Court's order and relevant to Defendant's

document requests that have or can be recovered from all devices and social media platforms."

As evidenced by 3M's own investigation into Windish's Truth Social profile, that was false.

Although Windish's willfulness is mitigated somewhat by her partial compliance with the

Court's order, *Avandia*, 319 F.R.D. at 486, the pattern of obfuscation she has exhibited in this

---

[6] Windish testified that it was her regular practice to delete text messages to free up storage space on her cell phone. Even if the Court accepts that that is the case, this *Poulis* factor nonetheless weighs in favor of dismissal because of her willful suppression of her social media posts.

case cannot be ignored and is strong evidence that her failure to produce additional social media

posts was willful.  Certainly, a statement by Plaintiff that she "does not consent to providing

Defendant with access to her social media accounts" after being ordered to do so cannot be seen

as anything but willful.

Moreover, no reasonable excuse for Windish's conduct can be discerned.  She insists that

she has acted in good faith because the communications that were not disclosed either could not

be found or were covered by the attorney-client privilege.  That simply beggars belief.  The

screenshots of Windish's Telegram group chats that were produced are facially incomplete.  The

Telegram group chats are titled "Triple M – Ex[c]eption Denied" and "Triple M – Operation

Justice."  It is not farfetched to conclude that "Triple M" refers to 3M, the Defendant here, or—

given the group chats' titles—that they contain discussion of Windish's employment, religious

beliefs, and views on the COVID-19 vaccine that would be covered by the Court's order

compelling compliance with Requests for Production 27(d) and 27(e).  Indeed, the few pages of

screenshots that have been produced to reference such matters and appear to be portions of

larger, ongoing conversations between group members.  From context, then, it is apparent that

there are many more responsive messages from these group chats.  On top of that, 3M has

brought relevant Truth Social posts to the Court's attention itself.  More responsive information

existed, and Windish simply did not want to produce it.  Finally, the communications at issue

were not with an attorney and likely were not covered by the attorney-client privilege.  *See*

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994); *see generally*

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  In any event, "[t]o the extent that," as

here, "the record is ambiguous as to the elements which are necessary to establish the claim of

privilege, the burden of proving that the attorney-client privilege applies is placed upon the party

asserting the privilege," *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) (internal quotation

marks and citation omitted), and Windish offers no argument here—or in her opposition to 3M's

motion to compel—as to which withheld communications are privileged and why.  Thus,

Windish's misconduct was willful, so the fourth *Poulis* factor weighs in favor of dismissal.

### E.  Effectiveness of Alternative Sanctions

Despite the existence of other potential sanctions, only dismissal "would 'serve the ends

of justice'" here.  *Williams*, 2024 WL 1155434, at *5 (quoting *Poulis*, 747 F.2d at 869).  To be

sure, dismissal with prejudice is far from the only sanction available to the Court.  Alternative

sanctions "include prohibiting the disobedient party from supporting his claims or from

introducing designated matters into evidence, striking pleadings . . . in part, staying further

proceedings until our order is obeyed, and treating as contempt of court the failure to obey any

order, and the payment of expenses."  *Gabriel v. Terra*, 2023 WL 4377068, at *4 (E.D. Pa. July

6, 2023).  The Court also can issue "a warning[ or] a formal reprimand, [or] plac[e] the case at

the bottom of the calendar."  *Titus v. Mercedes-Benz of N. Am.*, 695 F.2d 746, 759 n.6 (3d Cir.

1982).  The effectiveness of alternative sanctions depends in part on their ability to "preserv[e]

the integrity of the courts" and "deter[] future misconduct on the part of other litigants."

*Derzack v. County of Allegheny*, 173 F.R.D. 400, 417 (W.D. Pa. 1996) (citations omitted).

Because of the seriousness of the misconduct at issue and inefficacy of potential

alternative sanctions, even though no lesser sanctions have been implemented, this *Poulis* factor

nonetheless weighs in favor of dismissal.  Where, as here, a party has willfully flouted the

Court's order, lesser sanctions will not suffice.  *See, e.g.*, *Hayes v. Nestor*, 2013 WL 5176703, at

*5 (D.N.J. Sept. 12, 2013).  Dismissal thus is necessary to deter similar misconduct in the future.

*Derzack*, 173 F.R.D. at 417.

Moreover, the nature of Windish's claim and of her misconduct limits the effectiveness

Case 2:23-cv-01531-WB Document 25 Filed 04/12/24 Page 16 of 18

of lesser sanctions. Albeit brought under separate statutes, Windish presses a single religious

discrimination claim based on 3M's denial of her request for an exemption from the vaccination

requirement. As discussed *supra*, to establish her *prima facie* case, she must show she opposed

vaccination pursuant to a sincere religious belief. *Webb*, 562 F.3d at 259. The most important

information that Windish withheld at least casts some doubt on her allegations to support that

part of her *prima facie* case. Indeed, in some circumstances, striking part of a complaint is an

appropriate lesser sanction. *Gabriel*, 2023 WL 4377068, at *4. But because Windish's entire

case relies on her opposition being grounded in a sincere religious belief, striking parts of her

Complaint that relate to the information she withheld would have the same effect as dismissal.

*See Bedwell*, 843 F.2d at 695-96 (affirming the district court's decision to dismiss the case

because the plaintiff's misconduct "related to key damages issues" so "merely precluding

testimony . . . would be tantamount to a dismissal").[7]

Therefore, because of the seriousness of Windish's misconduct, the importance of the

information that she withheld, and the facts underlying her claim, no sanction short of dismissal

will suffice under *Poulis*.

### F. Meritoriousness of Windish's Claim

The final *Poulis* factor does not weigh in favor of or against dismissal. "Generally, in

determining whether a plaintiff's claim is meritorious, we use the standard for a Rule 12(b)(6)

motion to dismiss for failure to state a claim." *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir.

2008) (citing *Poulis*, 747 F.2d at 869-70). Thus, "when the allegations of the pleadings, if

---

[7] Similarly, based on Windish's own briefing, a fine or assessment of attorney's fees would be inappropriate. The litigant's "financial situation" is relevant to the appropriateness of alternative sanctions. *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (per curiam). Windish describes herself as "a working-class person." She noted in her Complaint that she now makes "significantly less" than her final hourly wage at 3M of $27-28 per hour. In such circumstances, "monetary sanctions would not be an effective alternative." *Id.*

established at trial, would support recovery by plaintiff," this factor weighs against dismissal. *Poulis*, 747 F.2d at 870.  That said, "[w]here a plaintiff makes out a prima facie case, but the defendant raises a prima facie defense, the factor may not weigh in favor of the plaintiff." *Adams*, 29 F.3d at 876-77.  That means that "[t]he meritoriousness factor is neutral and not dispositive" where a college is alleged to have failed to accommodate a student's disabilities even where the plaintiff's complaint was "facially meritorious" because the defendant "plead[ed] in part that it made numerous accommodations for" him.  *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (per curiam).

Here, Windish presses a claim of religious-based discrimination under Title VII and the PHRA.  Again, to make out a *prima facie* case of discrimination, she "must show: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement."[8] *Webb*, 562 F.3d at 259 (citation omitted).  As early in the litigation as filing its Answer, 3M has maintained that Windish cannot establish her *prima facie* case because her "request for accommodation was not based upon a sincerely held religious belief that conflicted with receiving the vaccine."  ECF No. 4 at 12.  Thus, even if the Court were to assume *arguendo* that Windish's Complaint is "facially meritorious," *Emerson*, 296 F.3d at 191, 3M has "raise[d] a prima facie defense" that renders this *Poulis* factor neutral, *Adams*, 29 F.3d at 876; *accord White v. FedEx Supply Chain, Inc.*, 2020 WL 7075259, at *5 (M.D. Pa. Dec. 3, 2020).

In sum, of the six *Poulis* factors, five weigh in favor of dismissal to one degree or another, and one does not point either in favor of or against dismissal.  Based on the above

---

[8] The Third Circuit has applied the framework for religious discrimination claims under Title VII to the PHRA. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 318-19 (3d Cir. 2008) (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002)).

factual findings and their application to precedent, the Court finds that dismissing Windish's

Complaint with prejudice is warranted pursuant to Rule 37(b)(2) of the Federal Rules of Civil

Procedure.[9]

### IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Sanctions will be granted, and

Windish's Complaint will be dismissed with prejudice.  An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**

---

[9] 3M also argues that dismissal is proper under Federal Rules of Civil Procedure 37(e) and 41 as well as the Court's inherent authority to issue sanctions, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).  Because dismissal is appropriate under Rule 37(b)(2), Windish's conduct will not be analyzed under these additional authorities.